UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TORBIT, INC., <br><br> Plaintiff, <br><br> v. <br><br> DATANYZE, INC. and ILYA SEMIN, <br><br> Defendants. | Case No.: 5:12-CV-05889-EJD <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> [Re: Docket Nos. 6, 14] |

Presently before the Court are Defendants Datanyze, Inc. and Ilya Semin's (collectively, "Defendants") Motion to Compel Arbitration and Stay Action Pending Arbitration (Dkt. No. 6) and Plaintiff Torbit, Inc.'s ("Plaintiff") Motion for Preliminary Injunction (Dkt. No. 14). The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Having reviewed the parties' briefing, the court GRANTS Defendants' Motion to Compel Arbitration and Stay Action Pending Arbitration and DENIES Plaintiff's Motion for Preliminary Injunction as moot.

**I.   BACKGROUND**

The following factual background is taken from the allegations contained in Plaintiff's complaint and the exhibit attached thereto. This case arises out of Defendants' alleged improper

1

use of Plaintiff's trade secrets and proprietary information both before and after individual Defendant Ilya Semin's termination from Plaintiff's employment. Mr. Semin is a software developer who was employed by Plaintiff from approximately October 2011 through April 2012. Compl. ¶ 7, Dkt. No. 1. The terms of Mr. Semin's employment were governed by his offer letter and the "Employee Proprietary Information and Inventions Agreement" (collectively, "Agreement"). Compl. ¶ 8, Ex. A. By signing these documents Mr. Semin agreed, inter alia, that:

> during and after his employment, he would not disclose, use or publish Plaintiff's "proprietary information" including its "trade secrets" (Compl. ¶ 9);
>
> he would assign to Plaintiff any rights he may have had or acquired in "proprietary information" and any inventions (Compl. ¶¶ 10-11);
>
> he would not engage in competitive business activity during the course of his employment (Compl. ¶ 12);
>
> he would not copy, delete, or alter any of Plaintiff's information contained on his company computer (Compl. ¶ 12);
>
> he would return all Plaintiffs' documents and information upon the termination of his employment (Compl. ¶ 13); and
>
> during his employment and for one year thereafter he would disclose to Plaintiff all inventions he authored, conceived, or reduced to practice and would refrain from soliciting the business of any of Plaintiff's customers (Compl. ¶¶ 12, 14).

The Agreement also included an arbitration clause:

> In the event of any dispute or claim relating to or arising out of our employment relationship, you and the Company agree that (i) any and all disputes between you and the Company shall be fully and finally resolved by binding arbitration, (ii) you are waiving any and all rights to a jury trial but all court remedies will be available in arbitration, (iii) all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion, (iv) the

2
Case No.: 5:12-CV-05889-EJD
ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINITFF'S MOTION FOR PRELIMINARY INJUNCTION

1   arbitration shall provide for adequate discovery, and (v) the Company shall pay all but the
2   first $125 of the arbitration fees.

Compl. Ex. A at 2.

Mr. Semin signed the Agreement on October 4, 2011, and began his work with Plaintiff on October 31, 2011. Compl. ¶¶ 7-8, Ex. A.

During the course of his employment, Mr. Semin worked on the development of an internal tool known as Playbook. That technology "was designed to detect, monitor and record changes made to websites in Torbit's industry." Compl. ¶¶ 15, 18. Playbook became Plaintiff's "most valuable trade secret and one if its top competitive advantages." Compl. ¶ 17.

Plaintiff alleges that Mr. Semin used Plaintiff's computer network to download its code repository, including its trade secrets and proprietary information, onto his personal computer and that Defendants stole the Playbook concept, technology, design and functionality. Compl. ¶¶ 22-23. Furthermore, Plaintiff alleges that Mr. Semin founded his company, Datanyze, during the course of his employment and that Datanyze is using Playbook and other of Plaintiff's proprietary information and inventions. Compl. ¶¶ 24-25.

Plaintiff filed this case on November 16, 2012, alleging five causes of action: (1) Violations of Federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (against Mr. Semin only); (2) Violation of Colorado's Uniform Trade Secrets Act ("CUTSA"), Col. Rev. Stat. §7-74-101 et seq. (against both Defendants); (3) Breach of Contract (against Mr. Semin only); (4) Breach of Duty of Loyalty (against Mr. Semin only); and (5) Trespass to Chattels (against Mr. Semin only). On December 17, 2012, Defendants filed the instant Motion to Compel Arbitration and Stay the Action, to which the court now turns.

## II. LEGAL STANDARD

The Federal Arbitration Act mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the avoidance of any contract." 9 U.S.C. § 2. "By its terms, the Act 'leaves no place for the exercise of

3
Case No.: 5:12-CV-05889-EJD
ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINITFF'S MOTION FOR PRELIMINARY INJUNCTION

discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citing Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)). Accordingly, a court's role is limited to determining: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Id. If a party seeking arbitration establishes these two factors, the court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130.

If a contract contains an arbitration clause, there is a presumption of arbitrability. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986). In that case, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1139 (9th Cir. 1991). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T, 475 U.S. at 648 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

### III. DISCUSSION

The parties agree that arbitration is required for Plaintiff's claims of trade secret misappropriation in violation of CUTSA (Claim 2), breach of contract (Claim 3), and breach of the duty of loyalty (Claim 4) against Mr. Semin. See Pl. Opp'n at 1, 8, Dkt. No. 21; Def. Reply at 1, Dkt. No. 22. Therefore, the court must only consider the arbitrability of Plaintiff's claims for violations of the CFFA (Claim 1) and trespass to chattels (Claim 5) against Mr. Semin and Datayanze's standing to compel arbitration of Plaintiff's claim against it for violations of CUTSA (Claim 2).

#### a. Arbitrability of Plaintiff's CFAA and Trespass to Chattels Claims against Mr. Semin

Plaintiff argues that its First and Fifth causes of action against Mr. Semin fall outside of the scope of the Agreement's arbitration clause. As the party opposing arbitration, Plaintiff bears the

burden of proving these claims are unsuitable for arbitration. See Green Tree Financial Corp.-Alabama v. Randolph, 531 US. 79, 91 (2000). The Agreement at issue provides that all claims "relating to or arising out of our employment relationship" are subject to arbitration. Compl. Ex. A. The Ninth Circuit has found arbitration clauses containing similar language to be "broad and far reaching" (Chiron, 207 F. 3d at 1131) and capable of covering all claims "having a significant relationship to the contract and all disputes having their origin or genesis in the contract" (Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (construing "arising in connection with" broadly). In order for a claim to be arbitrable under such a clause, the "factual allegations need only 'touch matters' covered by the arbitration clause and all doubts are to be resolved in favor of arbitrability." Simula, 175 F.3d at 721 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n. 13 (1985)).

The factual allegations supporting Plaintiff's CFAA and trespass to chattels claims against Mr. Semin clearly "touch matters" covered by the Agreement's arbitration clause. The CFAA claim alleges that Mr. Semin "intentionally and without authorization" accessed Plaintiff's computers and obtained valuable information, including Playbook, from such computers. Compl. ¶¶ 28-29. Similarly, the trespass to chattels claim alleges that Mr. Semin's liability stems from his "intentionally accessing [Plaintiff's] computers and computer networks and downloading [Plaintiff's] confidential and Proprietary Information, trade secrets and Inventions, for his own use and/or Datanyze's use, without authorization." Compl. ¶ 58. Though neither claim specifies the timeframe in which Mr. Semin allegedly accessed these computers without authorization, elsewhere the Complaint provides that "during and following his employment…Mr. Semin stole the proprietary Playbook" (Compl. ¶ 19) and "during and following his employment…and without [Plaintiff's] authorization…Mr. Semin accessed [Plaintiff's] computers and computer networks and downloaded Torbit's code repository onto his personal computer, including [Plaintiff's] trade secrets, Proprietary Information and Inventions" (Compl. ¶ 23). As these paragraphs highlight, Plaintiff has alleged that Mr. Semin engaged in unauthorized computer activity and improper use

of Plaintiff's proprietary information during the course of his employment. Such conduct "touches matters" that "relat[e] to or aris[e] out of" the Agreement because the Agreement covers the copying of Plaintiff's information to Mr. Semin's personal computer and the proper usage of that information. See, e.g. Compl. ¶¶ 12-13. Therefore, the First and Fifth Causes of Action against Mr. Semin are arbitrable.

### b. Datayanze's Standing to Compel Arbitration

The parties dispute whether Datayanze, a nonsignatory to the Agreement, has standing to compel arbitration of Plaintiff's claim against it under an equitable estoppel theory. "The right to compel arbitration stems from a contractual right,' which generally 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'" Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993) (citation omitted). However, in certain circumstances, a non-signatory to an agreement can compel a signatory to arbitrate. Particularly relevant to the case at hand, a non-signatory can compel arbitration under an alternative equitable estoppel theory

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (citations omitted). In this context, where a non-signatory seeks to compel a signatory to arbitrate, the doctrine operates to protect the vitality of arbitration agreements and federal arbitration policy. See Grigson v. Creative Artists Agency LLC, 210 F.3d 524, 528 (5th Cir. 2000), reh'g en banc denied, 218 F.3d 745, cert denied, 531 U.S. 1013 (2000)) ("[a signatory] cannot on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny the arbitration provision's applicability because the defendant is a non-signatory"); MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) ("[o]therwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted") (citation omitted). In order for a non-signatory to have standing

6
Case No.: 5:12-CV-05889-EJD
ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

to compel arbitration under this theory, the claims brought against it by the signatory must be "intertwined with the contract providing for arbitration" or "arise out of" or "relate directly to" the contract containing the arbitration provision. Mundi, 555 F.3d at 1047 (citations omitted).

Plaintiff argues that Datayanze does not have standing to compel arbitration of the CUTSA claim because that claim, as alleged against Datayanze, does not rely on Mr. Semin's employment agreement. To succeed on its CUTSA claim against Datayanze, Plaintiff must prove that (1) Plaintiff possessed a valid trade secret; (2) that the trade secret was disclosed or used without consent; and (3) that Datayanze knew or should have known that the trade secret was acquired by improper means. Gates Rubber Co. v. Bando Chem. Indus., Ltd., 9 F.3d 823, 847 (10th Cir. 1993). Thus, to have standing to compel arbitration on this claim, Datayanze must show proof that at least one of these elements is "intertwined" with or "relates directly to" Mr. Semin's employment agreement.

Defendants contend that proof of Datayanze's knowledge relies on Mr. Semin's employment agreement. The CUTSA claim is premised on allegations that Datayanze is using Plaintiff's trade secrets and "knew, or had reason to know, that Mr. Semin acquired Torbit's trade secrets improperly or under circumstances giving rise to a duty to either keep them secret or limit their use." Compl. ¶ 38. Plaintiff concedes that this claim is arbitrable against Mr. Semin, but argues that it has pleaded two theories of "knowledge" on the part of Datayanze, one of which is independent of the employment agreement and thus not arbitrable. The first and most obvious theory is that Datayanze had knowledge of Mr. Semin's duty to keep Plaintiff's trade secrets confidential by virtue of the Agreement. Particularly, Plaintiff alleges that it "disclosed its trade secrets to Mr. Semin…pursuant to the Agreement...with the express understanding that all of [Plaintiff's] trade secrets were to be maintained in the strictest confidence…." Compl. ¶ 33. The proof of such knowledge would plainly rely on interpretation of the Agreement and Mr. Semin's duties thereunder, and so would be arbitrable.[1] See Mundi, 555 F.3d at 1047. However, Plaintiff

---

[1] Plaintiff's suggestion that the unclean hands doctrine should preclude the court from applying equitable estoppel because Defendants' "invocation of the Offer Letter is tainted by bad faith" is far from compelling. Mr. Semin's

7
Case No.: 5:12-CV-05889-EJD
ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

argues that its CUTSA claim contains an alternative theory of knowledge on the part of Datayanze—that the claim's "improper means" language implies that Datayanze had knowledge of Mr. Semin's alleged trespass to chattels and unauthorized access of computers involved in interstate commerce—and thus do not rely on the employment agreement. Pl. Opp. at 6. The court is not persuaded that the claim states as much to the satisfaction of Federal Rule of Civil Procedure Rule 8(a). However, even if this theory were clearly stated, it would still not preclude the claim from arbitration. As discussed in the previous section, Mr. Semin's alleged violations of the CFAA and trespass to chattels "touch matters" covered by the arbitration clause in the Agreement (Simula, 175 F.3d at 721), and thus are "intertwined with the contract providing for arbitration" (Mundi, 555 F.3d at 1047). Accordingly, Datayanze has standing to compel arbitration on the CUTSA claim.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Compel Arbitration and Stay Action Pending Arbitration. This action is STAYED in its entirety pending final resolution of the arbitration. Accordingly, Plaintiff's Motion for Preliminary Injunction is DENIED as moot. The Clerk shall ADMINISTRATIVELY CLOSE this matter.[2]

**IT IS SO ORDERED**

Dated: February 13, 2013

EDWARD J. DAVILA
United States District Judge

---

employment agreement is much more than "incidental" to the dispute, including the claim against Datayanze. As such, Defendants arguments are reasonable.

[2] This order does not preclude any party from moving to reopen this action, when appropriate.

Case No.: 5:12-CV-05889-EJD
ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING ARBITRATION; DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION